311 Ga. 673
FINAL COPY

S21A0302.  MAXWELL v. THE STATE.
S21A0303. WASHINGTON v. THE STATE.

MELTON, Chief Justice.

Zonnique Maxwell and Tyquarius Washington (collectively "Appellants") appeal the lower court's partial denial of their respective motions for autrefois convict and pleas of procedural double jeopardy based on OCGA §§ 16-1-7 and 16-1-8. For the reasons set forth below, we affirm in part and reverse in part.[1]

1. The available evidence[2] relevant to Appellants' motions indicates that, on September 17, 2017, a shooting occurred on East 33rd Street in Savannah. A police officer was dispatched to that scene, but he was subsequently directed to Memorial Medical

---

[1] Because of the similarity of these appeals and the arguments raised by Appellants, we have consolidated them for purposes of review.

[2] At this pre-trial stage in the proceedings against Appellants, the evidence has not yet been fully developed and is somewhat limited. At the hearing on Appellants' procedural double jeopardy motions, the trial court largely relied on proffers from Appellants' lawyers and the prosecutor to determine that Appellants had not met their burdens.

Center, where Jaheim Morris had arrived with a gunshot wound to his head. Morris died later that day. At the hospital, police learned that Morris had been driven to the hospital in a private car, which had a bullet hole in one of its doors. The occupants of this car (other than Morris) were Maxwell, Washington, and two others. Police searched these individuals for weapons and recovered a handgun from Maxwell and a revolver and a pistol from Washington.

Maxwell was arrested for possession of a handgun by a person under the age of 18, see OCGA § 16-11-132 (b), and was subsequently accused in the State Court of Chatham County on May 16, 2018, for this misdemeanor offense.[3] On September 19, 2018, after further investigation into Morris's shooting, Maxwell was indicted in the Superior Court of Chatham County for two counts of felony murder (Counts 22 and 23), one count of aggravated assault

[3] The accusation charged Maxwell with the offense of POSSESSION OF HANDGUN BY PERSON UNDER THE AGE OF 18 YEARS, for that the said ZONNIQUE MAXWELL, in the County of Chatham and State of Georgia, on or about the 17th day of September, 2017, being under the age of 18 years, did unlawfully possess a Jiminez Arms .25 caliber handgun, contrary to the laws of the State of Georgia, the good order, peace and dignity thereof.

(Count 24), one count of carrying a weapon by an underage person without a license (Count 29), three counts of possession of a firearm during the commission of a felony (Counts 30 and 32), and seven counts of violating the Street Gang Terrorism and Prevention Act (Counts 49-51 and Counts 56-59). On January 30, 2019, Maxwell entered a negotiated guilty plea to the firearm charge in state court, and she was sentenced to serve 12 months.[4] On February 13, 2019, Maxwell filed a "Motion in Autrefois Convict and Plea of Former

---

[4] At the plea hearing, the prosecutor provided the following factual basis for the guilty plea:

> Ms. Maxwell was originally charged with one count of possession of a handgun by a person under the age of 18 years. If this case were to proceed to trial, evidence would show that on or about September 17th, 2017, a Shot Spotter detected gunfire near the 1500 block of 33rd Street in Chatham County, Georgia. A 9-1-1 caller, in this area, called and indicated that she saw a white vehicle leaving the scene . . . . A short time later, a gunshot victim was admitted to the emergency entrance of the Memorial Hospital. Officers responded to that location, identified a gold vehicle with a single bullet hole in the door. Officers inspected the vehicle. There has been a victim of a gunshot wound in that vehicle. Ms. Maxwell was seated in the back middle seat. Officers spent some time investigating the victim of the shooting, during which they searched all of the individuals of the vehicle. As I stated before, Ms. Zonnique Maxwell was located in the middle of the back seat. She initially said she didn't have anything on her. And then she indicated to the officer that she had a weapon, which was a .25 caliber firearm. That was removed from her person by the officers[,] and she was detained at this point.

3

Jeopardy," seeking dismissal of the superior court charges against her pursuant to Georgia's statutory proscriptions against double jeopardy, OCGA §§ 16-1-7 and 16-1-8. Maxwell maintained that the superior court prosecution was barred because those charges involved the same gun and arose from the same conduct to which she pleaded guilty in state court.

Similar to Maxwell, Washington was initially arrested at the hospital and charged with carrying weapons without a license. See OCGA § 16-11-126 (h). He was subsequently accused in the State Court of Chatham County on May 16, 2018, for this misdemeanor offense.[5] On September 19, 2018, Washington was indicted in the Superior Court of Chatham County for two counts of felony murder (Counts 22-23), one count of aggravated assault (Count 24), two

---

[5] The accusation charged Washington

With the offense of CARRYING A WEAPON WITHOUT A LICENSE, for that the said TYQUARIUS DAVION WASHINGTON, in the County of Chatham and State of Georgia, on or about the 17th day of September, 2017, did carry a weapon, to-wit: a pistol and a revolver, without a valid weapons carry license, contrary to the laws of the State of Georgia, the good order, peace and dignity thereof.

4

counts of carrying a weapon without a license (Counts 33-34), three counts of possession of a firearm during the commission of a felony (Counts 35-37), and eight counts of violating the Street Gang Terrorism and Prevention Act (Counts 49-51 and Counts 60-64), all in relation to Morris's shooting.[6] On September 18, 2018, Washington entered a negotiated guilty plea on the firearm charge in state court and was sentenced to 12 months of probation.[7] Thereafter, on March 7, 2019, Washington filed a motion to adopt Maxwell's procedural double jeopardy motion.

On May 15, 2019, and October 21, 2019, the trial court held a hearing regarding the motions filed by Appellants. At this hearing,

---

[6] We note that the other occupants of the car with Maxwell and Washington were charged with a number of similar offenses.

[7] At Washington's plea hearing, the prosecutor provided the following factual basis for the guilty plea:

> If this had gone forward, the State would have shown that[,] on or about September 13th, 2017, officers responded to Memorial Medical Center, here in Chatham County, in regards to a possible shooting. Upon arrival[, officers] met with several individuals one of which was [Washington. A]fter speaking to him and doing a search, [officers] found a weapon in his possession[,] and he did not have a license for that.

the State agreed to the dismissal of the single count of carrying a weapon by an underage person without a license against Maxwell (Count 29) and the two counts of carrying a weapon without a license against Washington (Counts 33 and 34).[8] The trial court granted Appellants' motions with regard to these charges, because they arose from Appellants' possession of the same handguns at the hospital and were thereby barred by procedural double jeopardy. However, the trial court denied the motions with respect to all of the remaining superior court charges. Appellants now challenge this ruling with largely identical arguments.

For the reasons set forth below, we hold that, for the majority of the superior court counts against Appellants, the trial court properly denied Appellants' motions. However, as set out in Division 4, we hold that, with respect to one count of street gang activity against Maxwell and two counts against Washington, the trial court should have dismissed these counts as they are explicitly premised

---

[8] The State argued that these counts were not barred by procedural double jeopardy, but it agreed to their dismissal in order to make things "easier."

in the indictment on the counts that were dismissed.

2. "On appeal from the grant or denial of a double jeopardy plea in bar, we review the trial court's oral and written rulings as a whole to determine whether the trial court's findings support its conclusion." (Citation and punctuation omitted.) *State v. Hill*, 333 Ga. App. 785, 785 (777 SE2d 265) (2015). When the facts are undisputed, our review of the trial court's application of the law to those facts is de novo. See id. The trial court's factual findings are assessed under the standard of clear error. See *Jenkins v. State*, 294 Ga. 506, 508 (1) (755 SE2d 138) (2014).

As background for Appellants' claim regarding procedural double jeopardy protection, we have previously explained:

> The [constitutional] rule against double jeopardy is . . . expressed in various terms but basically provides that no person shall be put in jeopardy of life or liberty more than once for the same offense. It is a simple and concise statement of law. Unfortunately[,] it has become confused because many courts have not distinguished its application to the bar of successive prosecutions and the bar to multiple convictions. The bar to successive prosecutions is referred to as the procedural aspect of the double jeopardy rule. The rationale behind the bar to successive prosecutions is to prevent harassment of the

7

accused. The bar to multiple convictions is referred to as the substantive aspect. The rationale behind the bar to multiple convictions is to prevent multiple and excessive punishments.

The bar to multiple convictions usually arises where several crimes arising out of one criminal transaction are tried at the same time. In such cases the rule does not operate until after the verdicts. Under Georgia law it bars the conviction and therefore the punishment of all crimes which are as a matter of law or a matter of fact included in a major crime for which the defendant has been convicted. *State v. Estevez*, 232 Ga. 316 (206 SE2d 475) (1974). However, the bar to multiple convictions may have a procedural aspect where the crimes arising out of the same criminal transaction are tried separately. Where crimes are tried separately it is generally held that if multiple convictions arising out of a single prosecution are barred they will likewise be barred from successive prosecution. Therefore[,] when crimes are to be prosecuted separately[,] the more serious known crimes should be prosecuted first to avoid the conviction of a lesser crime barring a subsequent prosecution for a more serious crime.

(Footnote omitted.) *Keener v. State*, 238 Ga. 7, 7-8 (230 SE2d 846) (1976).

These *constitutional* double jeopardy protections are enhanced by additional *statutory* protections provided under state law. See *State v. Adams*, 355 Ga. App. 875, 880-881 (846 SE2d 148) (2020). "Because the Georgia Code expands the proscription of double

jeopardy beyond that provided for in the United States and Georgia Constitutions, all questions of double jeopardy in Georgia must now be determined under OCGA §§ 16-1-6 [through] 16-1-8." (Punctuation and footnote omitted.) *Prater v. State*, 273 Ga. 477, 480 (4) (545 SE2d 864) (2001). Unlike constitutionally based double jeopardy, statutory procedural double jeopardy extends the concept of res judicata to the successive prosecution of different crimes arising from the same conduct in situations where the State should have prosecuted the different crimes in a single proceeding. See, e.g., *McCannon v. State*, 252 Ga. 515, 517 (315 SE2d 413) (1984).

Turning to the pertinent statutes, OCGA § 16-1-7 (b) provides that "[i]f the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution," except as provided in OCGA § 16-1-7 (c).[9] OCGA § 16-1-8 (b) (1) states, in relevant part:

---

[9] OCGA § 16-1-7 (c) provides: "When two or more crimes are charged as required by subsection (b) of this Code section, the court in the interest of justice may order that one or more of such charges be tried separately."

A prosecution is barred if the accused was formerly prosecuted for a different crime . . . if such former prosecution . . . [r]esulted in either a conviction or an acquittal and the subsequent prosecution . . . is for a crime with which the accused should have been charged on the former prosecution (unless the court ordered a separate trial of such charge)[.]

In other words, "[a] second prosecution is barred under OCGA § 16-1-8 (b) (1) if it is for crimes which should have been brought in the first prosecution under OCGA § 16-1-7 (b)." (Punctuation and footnote omitted.) *Nicely v. State*, 305 Ga. App. 387, 388 (1) (699 SE2d 774) (2010). Thus, when considered together, OCGA §§ 16-1-7 (b) and 16-1-8 (b) prevent successive prosecutions for crimes: (1) subject to the jurisdiction of the same court; (2) known to the proper prosecuting officer at the time the prosecution commences; and (3) arising from the same conduct. See *Banks v. State*, 320 Ga. App. 98, 99-100 (739 SE2d 414) (2013). For this procedural double jeopardy to attach, all three factors must be satisfied, and the defendant has the burden of proving that further prosecution is barred by the previous prosecution. See id. at 101.

3. To properly assess Appellants' arguments, we consider each

of these three procedural double jeopardy factors in turn. We note at the outset of this consideration that application of these factors may often be difficult when, in cases like this one, the question of procedural double jeopardy initially arises at a time before trial has occurred. The defendant bears the burden of proving procedural double jeopardy, see *Banks*, supra, 320 Ga. App. at 101, and a court must make decisions based on the limited facts or representations that are currently available from the parties. And, as discussed more fully in Division 3 (c), a court must also focus on consideration of how the State *could* prove its case at a future trial, as it may be impossible to know how the State actually will prove its case once trial is underway.

(a) It is undisputed that the state court charges relating to possession of a firearm for both Appellants could have been brought in superior court along with all of the remaining charges in a single prosecution. Superior courts have concurrent jurisdiction with all inferior courts over misdemeanor offenses. See *Hicks v. State*, 228 Ga. App. 235, 236 (1) (a) (494 SE2d 342) (1997) (citing Ga. Const. of

11

1983, Art. VI, Sec. IV, Par. I). This factor is satisfied.

(b) Both the state court crimes and the superior court charges also were known to the proper prosecuting officer when the accusations against Appellants were filed. The District Attorney for the Eastern Judicial Circuit is the proper prosecuting officer for both the State and Superior Courts of Chatham County. Tellingly, the accusations for the state court crimes as well as the indictments for the superior court charges against both Appellants were signed by that district attorney. "[T]he appearance of the district attorney's name on both an accusation and indictment constitutes circumstantial evidence which conclusively establishes [her] actual knowledge of the pendency of the prosecutions and of the offenses charged in each." *Mack v. State*, 249 Ga. App. 424, 426 (547 SE2d 697) (2001). See also *State v. Smith*, 259 Ga. 352, 352 (381 SE2d 37) (1989). The second factor is also satisfied.

(c) The only question that remains is whether the state court crimes and the superior court charges for Appellants arise from the same conduct for purposes of statutory procedural double jeopardy.

In order to determine whether offenses occurred as a result of the same conduct to constitute procedural double jeopardy, . . . the crimes, inter alia, must arise from the same transaction or continuing course of conduct, occur at the same scene, occur on the same date, and occur without a break in the action; additionally, if it is necessary to present evidence of the one crime in order to prove the other, then the State must prosecute those charges at the same time.

(Footnote omitted.) *Johns v. State*, 319 Ga. App. 718, 719 (738 SE2d 304) (2013). See also *State v. Stewart*, 317 Ga. App. 82, 84 (729 SE2d 478) (2012) ("A court also should consider whether the crimes occurred on the same date, at the same time, and in the same place, and whether the crimes had the same object and involved the same circumstances and parties.") (citation omitted). As the trial court correctly emphasized in its order,[10] it is impossible to know at this stage in the proceedings exactly how the State will prove its case, so,

---

[10] The trial court explained:
At this stage in the proceedings, it is impossible for the Court to know exactly how the State intends to prove its case. Regardless, the Court can envision numerous ways in which these other Superior Court Charges can be proven. For example, the State may have an eyewitness who will testify that he saw the Defendant with the gun in question at the scene of the alleged shooting, or the State may have photographic evidence of the Defendant holding the gun on or close to the date in question. Such evidence would allow the State to prove the other charges . . . .

13

as the trial court did, we must consider how the State *could* prove its case at a future trial based on whatever facts may be currently available.

While the state court crimes and the alleged superior court offenses were committed on the same date, as indicated by the prosecutors' representations at the plea hearings, they did not necessarily occur at either the same scene or the same time. According to the prosecutor, the state court gun possession crimes arose from Appellants' encounter with police at the hospital, where Appellants were apprehended. In contrast, rather than at the hospital, the superior court charges could be proved based on the shooting of Morris that occurred approximately 2.5 miles away at East 33rd Street. Additionally, the crimes at the hospital were committed at some time after the shooting — at least a period of time long enough for Morris to be driven to the hospital from the scene of the shooting. In other words, the State could conceivably prove the actions leading to Morris's shooting happened at a distinct point in time from Appellants' arrival at the hospital. These actions

14

would also be separated by Appellants' efforts to get their companion to a hospital in order for him to receive medical help. So, it is possible that at least by the time Appellants reached the hospital, one course of conduct had ended, and a different course of conduct had begun. See *Cooper v. State*, 253 Ga. 736, 737 (2) (325 SE2d 137) (1985) (violation of ordinance by possessing a knife at a location different than a rape committed at knifepoint on the same date considered a separate transaction). See also *Jackson v. State*, 336 Ga. App. 140, 144-145 (2) (784 SE2d 7) (2016) (no continuous course of conduct existed when defendant was charged in superior court with sexually assaulting victim inside an apartment and was charged in state court for criminal trespass and weapons charges after being found outside a different building in the same apartment complex "some time later" that same day); *Johns*, supra, 319 Ga. App. at 720 (defendant's guilty plea to misdemeanor criminal trespass did not bar subsequent DUI prosecution on procedural double jeopardy grounds where the criminal trespass was completed prior to the traffic stop, even though stop occurred near the residence in

question and police had information that defendant was intoxicated during the criminal trespass event). Therefore, for all of the reasons discussed above, the trial court appropriately determined that the superior court charges could be proven by a course of conduct different than the state court crimes.

The last inquiry is whether it is necessary to present evidence of the gun possession crimes at the hospital in order to prove the superior court charges. With regard to the charges of felony murder, aggravated assault, and possession of a firearm during the commission of a felony, the State could prove those felonies by showing that Appellants possessed firearms and actually committed these offenses, or that a co-defendant of Appellants actually committed the crimes and that Appellants helped in the commission of the crimes, encouraged a co-defendant to commit the crimes, or otherwise engaged in conduct that would make Appellants criminally responsible as parties to the crimes. See OCGA § 16-2-

20.[11] Under this circumstance, Appellants' state court charges would not be necessary to prove the superior court felony charges relating to Morris's shooting. Appellants' contentions that all of the crimes were indivisibly connected because they were committed in the same car and that some evidence of the trip to the hospital might be admissible during the felony trial does not alter this result. See, e.g., *Daniels v. State*, 355 Ga. App. 134, 137 (843 SE2d 18) (2020) (fact that State may introduce evidence of one crime at later trial of another does not mean the State *needs* to do so); *Johns*, supra, 319 Ga. App. at 720 ("two incidents were separate transactions, one of which had been completed prior to the other, and both of which could be presented to a trier of fact without disclosing evidence of the other"); *Jaheni v. State*, 285 Ga. App. 266, 269-270 (2) (a) (645 SE2d

---

[11] For example, Yusuf Maxwell, a co-defendant, was also charged in the superior court indictment with possession of a handgun at the time the felonies were committed. And, while Appellants were indicted as parties to a crime for felony murder and aggravated assault, but not possession of a firearm during the commission of a felony, "[t]he law is well-settled in Georgia that the State is not required to specify in the indictment that it is charging the defendant as a party to the crime." (Citation and punctuation omitted.) *Metz v. State*, 284 Ga. 614, 618 (3) (669 SE2d 121) (2008), overruled on other grounds by *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011).

735) (2007) ("We reject any contention that when one steals a vehicle, every act however unrelated and independent which he commits while in possession of that vehicle is, by virtue of that single fact, of the same conduct and same continuing transaction as the theft of the vehicle.") (punctuation and footnote omitted). It is also the case that, for the bulk of the remaining superior court charges against Appellants (excluding Counts 56, 60, and 61, which are addressed in the next division), we cannot say at this point in the proceeding that evidence of the state court crimes would be necessary to prove the superior court charges, and, as such, the trial court correctly held that Appellants had not satisfied their burdens of proving procedural double jeopardy. See *Stewart*, supra, 317 Ga. App. at 84-85.[12]

4. However, because of the dismissal of Count 29 against Maxwell and Counts 33 and 34 against Washington, to which the State agreed and has not sought to appeal, certain of the counts of

_____

[12] In this opinion, we address only whether procedural double jeopardy *required* the State to bring all charges in a single proceeding.

criminal street gang activity must be considered differently from the others. Count 56 against Maxwell and Counts 60 and 61 against Washington allege that Appellants engaged in criminal street gang activity that is expressly premised on the gun possession charges against Appellants that were dismissed (Count 29 against Maxwell, and Counts 33 and 34 against Washington). Because Counts 56, 60, and 61 rely on and are inextricably connected to the dismissed counts against Appellants, Counts 56, 60, and 61 should have been dismissed as well. For this reason, the trial court's orders on Appellants' motions must be reversed as to Counts 56, 60, and 61 only.

Accordingly, the trial court did not err in the manner it handled Appellants' procedural double jeopardy motions, except with respect to Counts 56, 60, and 61.

*Judgments affirmed in part and reversed in part. All the Justices concur.*

Decided June 1, 2021.

Murder. Chatham Superior Court. Before Judge Karpf.

*Steven L. Sparger*, for appellant (case no. S21A0302).

*Solomon A. Amuson*, for appellant (case no. S21A0303).

*Meg E. Heap, District Attorney, Matthew Breedon, Bradley R. Thompson, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.